UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:22-608 |
| | § | |
| STERLING BRUMANT, | § | |
| Defendant | § | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR HEARING TO DETERMINE ADMISSABILITY
OF EXTRANEOUS EVIDENCE/DISMISSAL OF PROSECUTION
AND NOTICE OF INTENT TO INTRODUCE EVIDENCE
PURSUANT TO F.R.E. RULES 401 AND 404(b)**

The United States of America hereby provides notice to the defense and this Honorable Court of its intent to introduce evidence at trial which is admissible under Rule 404(b)(2) of the Federal Rules of Evidence.

    I.   Factual Background of the Case

On September 15, 2021, a Confidential Human Source (hereafter referred to as CHS 1) contacted the Defendant, Sterling Brumant, aka "One Punch", via telephone number 504-598-8948 at or about 4:00 p.m. in reference to an associate (hereafter referred to as CHS 2) purchasing "K-Packs" of ecstasy/methamphetamine tablets. CHS 1 knew Brumant resided in the Miami, Florida area and Brumant informed CHS 1 that he was in Miami but would put CHS 2 in contact with an associate of Brumant's in Houston, Texas who would be able to sell K-packs to CHS 2 in Houston, Texas.

While CHS 1 was speaking with Brumant via telephone, Brumant provided the price of $500 per K-Pack, stating that each pill is fifty cents, and provided the address of 3363 McCue Road in Houston, Texas as the location the deal where would be made, and a time of approximately 7:30 p.m. Brumant further told CHS 1 that he would arrange the transaction of 4,000 tablets in exchange for $2000 with his supplier in Houston, Texas to occur that evening.

Later that day, special agents (SAs) and task force officers (TFOs) with the Multi-Agency Gang Task Force (MAGTF) conducted a controlled purchase of the K-packs from an individual who was later identified as Toree White (hereafter White).

At approximately 7:30 p.m. TFO Estrada and SA Myszka met with CHS 2 at a pre-determined location. At approximately 8:08 p.m. CHS 2 made a recorded phone call to Sterling Brumant to coordinate the purchase of K-Packs from Brumant's associate (later identified as White). This call was recorded by CHS 2 as part of the buy/walk operation video. Law enforcement reviewed this video and confirmed the call came from Sterling Brumant as they recognized him by voice.

Brumant then shared the telephone number of the supplier (White) which was 346-302-2823. CHS 2 then called phone number 346-302-2823 to let White know that CHS 2 was on the way to him to purchase the K-Packs.

Law enforcement maintained visual contact on CHS 2 while enroute to the location previously given by Brumant. At approximately 8:25 p.m. CHS 2 again spoke by phone to White who advised CHS 2 to come to the fourth floor of the parking garage in the apartment

complex. Law enforcement observed White come to the passenger's side window of CHS 2's vehicle and hand CHS 2 a cardboard box through the passenger's side window of the vehicle. CHS 2 discussed the purchase of additional drugs with White and then left the location.

At approximately 9:02 p.m., at the guidance of law enforcement, CHS 2 placed another phone call to White requesting the purchase of four additional K-Packs of ecstasy/methamphetamine pills as soon as possible. White responded that he could get the K-Packs but that he would have to drive fifteen minutes to get the K-Packs.

CHS 2 had missed an incoming phone call from Brumant while driving. At approximately 9:31 p.m., CHS 2 placed a call to Sterling Brumant to inform Brumant that CHS 2 was waiting on Brumant's associate/supplier (White) to sell CHS 2 more K-Packs. Brumant told CHS 2 to call him with whatever else CHS may need.

At approximately 9:50 p.m. White spoke with CHS 2 via telephone and stated that he was on his way back to the apartment complex with the K-Packs and would be back to the apartment complex shortly.

At approximately 9:57 p.m. CHS 2 again drove to 3363 McCue Road Houston, Texas, and attempted to purchase the K-Packs of ecstasy/methamphetamine pills from White. Law enforcement maintained visual contact on CHS 2 and confirmed the sale f the K-Packs White to CHS 2.

At approximately 10:29 p.m. CHS 2 contacted Sterling Brumant via telephone to confirm that the drug transaction was successful. Brumant confirmed and stated that he

was happy the deal went through and looked forward to meeting CHS 2 when CHS 2 was in Miami. This call was recorded as part of the buy/walk video and also confirmed to be the voice of Sterling Brumant.

All items sold by White were later tested and confirmed to contain over 500 grams of methamphetamine.

Law enforcement reviewed phone tolls of Brumant, White and CHS 2 who was utilizing phone number 281-868-1582, which were made into a graph. (See Exhibit One). Law enforcement also made a screen shot of the calls on the cellphone of CHS 2. (See Exhibit Two).

## II. Evidence of Other Bad Acts

The government intends to introduce evidence that the Defendant was party to the following Federal and Texas state law criminal violations which are charged, meet exceptions to 404(b) and/or are admissible under 609 as felonies or crimes of moral turpitude:

On or about December 7, 2015, the Defendant was convicted in Texas, for the misdemeanor offense of Assault.

On or about February 15, 2017, the Defendant was convicted in Texas for the misdemeanor offense of Carrying a Weapon.

The government understands the ongoing responsibility of disclosure and will alert defense counsel and the Court should additional potential 404 evidence be discovered.

Evidence of extrinsic prior crimes or bad acts is admissible if, as required by Federal Rule of Evidence 404(b), (1) the evidence is relevant to an issue other than the defendant's character, and (2) its probative value is not substantially outweighed by its prejudicial impact. *See United States v. Beechum*, 582 F.2d 898 (5th Cir.1978). District court decisions to admit evidence of prior bad acts under Rule 404(b) are reviewed under a heightened abuse of discretion standard. *See United States v. Mitchell*, 484 F.3d 762, 774 (5th Cir. 2007).

Under Rule 404(b), prior bad acts introduced to prove knowledge or intent are admissible as long as the probative value of the prior convictions exceeds their prejudicial effect. *See United States v. Gonzalez-Lira*, 936 F.2d 184, 189 (5th Cir. 1991) (citing *Beechum*, 582 F.2d at 911). In *United States v. Beechum*, the Fifth Circuit outlined a two-step test to determine the admissibility of evidence of a defendant's prior wrongful acts. *See* 582 F.2d 898, 910 (5th Cir. 1978). "Under *Beechum*, evidence of extrinsic offenses is admissible if it is (1) relevant to an issue other than the defendant's character, and (2) the incremental probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002), *cert. denied*, 536 U.S. 934 (2002) (emphasis added). The test set forth by the *Beechum* court is one that favors inclusion, rather than exclusion. The only exception to this general rule of inclusion is where the sole purpose of the evidence is to prove disposition. *See United States v. Shaw*, 701 F.2d 367, 386 (5th Cir. 1983), *cert. denied*, 465 U.S. 1067 (1984). Additionally, the district court may easily minimize any prejudicial

effect by instructing the jury that it can only consider the bad acts for the limited purpose of intent, knowledge and/or motive. When courts take those two steps, the Fifth Circuit has consistently found no abuse of discretion. *See United States v. Cockrell*, 587 F.3d 674, 680 (5th Cir. 2009) (citing *Beechum*, 582 F.2d at 917; *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)).

A district court applying the *Beechum* test should admit evidence of a defendant's prior misconduct of a drug-related offense when that arrest or conviction shows intent, knowledge, and/or motive. Where a defendant enters a not guilty plea in a conspiracy case, the first prong of the *Beechum* test is satisfied. *See Cockrell*, 587 F.3d at 679 (citing *Broussard*, 80 F.3d at 1040). "'The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence.'" *Id*. (quoting *Broussard*, 80 F.3d at 1040) (citing *United States v. Parziale*, 947 F.2d 123, 129 (5th Cir. 1991), *cert. denied*, 503 U.S. 946 (1992)). Thus, where the prior offense involved the same intent required to prove the charged offense, that prior offense is relevant and the Court should proceed to the second prong under *Beechum*. *See id*. Furthermore, in drug offense cases, courts frequently find extrinsic drug offense evidence admissible. *See Broussard*, 80 F.3d at 1040 (holding that Broussard's prior felony possession of marijuana was "similarly highly probative of her knowledge of the drug conspiracy and her intent to participate" in a cocaine conspiracy) (citing *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995); *United States v. Harris*, 932 F.2d 1529, 1534 (5th Cir.), *cert. denied*, 502 U.S. 897 (1991) (holding

that proof of prior drug activities is more probative than prejudicial)). Evidence of past drug transactions can be used to establish criminal intent. *See United States v. Misher*, 99 F.3d 664, 670 (5th Cir. 1996) (citing *United States v. Wilwright*, 56 F.3d 586, 589 (5th Cir.), *cert. denied*, 56 F.3d 586 (1995) (recognizing that it is "settled in this Circuit that Rule 404(b) allows the admission of other crime evidence when a defendant places his intent at issue in a drug conspiracy case"). In order to qualify as prior conduct under 404(b), there is no requirement that the prior bad act result in conviction or that even formal charges be filed. *See United States v. Williams*, 299 F.3d. App'x 324, 326-27 (5th Cir. 2008); *Gonzalez-Lira*, 936 F.2d at 189.

While the prior convictions pose some threat of prejudice, the rule 403 balancing test requires exclusion only where the court believes there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that such risk is disproportionate to the probative value of the offered evidence. *See Cockrell*, 587 F.3d at 679 (citing *Beechum*, 582 F.2d at 915 n. 20). A bald assertion that the probative value of the extrinsic evidence is substantially outweighed by its prejudicial effect does not show an abuse of discretion. *See id*.

Finally, although the remoteness of the extrinsic act may weaken its probative value, the age of the prior conviction or arrest does not bar its use under Rule 404. *See id*. at 680 (citing *Broussard*, 80 F.3d at 1040) ("finding no prejudice from admission of prior conviction that was more than 10 years before the charged offense); *United States v.*

*Chavez*, 119 F.3d 342, 346 (5th Cir. 1997) (finding no abuse of discretion in the admission of a 15-year old conviction")).

Therefore, to the extent that the Defendant has placed his knowledge and intent at issue by pleading not guilty, the government should be permitted to introduce extrinsic evidence for the purpose of establishing his knowledge and intent in the instant matter. Accordingly, based on the authority cited above, the Government respectfully requests that the Court authorize the admission of the defendant's prior convictions and bad acts.

### III. Request for Severance

The United States has no objection to a severance of Toree White and Sterling Brumant from the remaining co-defendants in the above styled case.

### IV. Request for Dismissal in the Alternative

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to move to dismiss an indictment for failure to charge an offense. Rule 7(c) requires a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). These requirements are essentially the same as those of the Sixth Amendment, which mandates that an indictment must: "(1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan,* 74 F.3d 545, 551 (5th Cir. 1996). The Government is not required to prove its case in the indictment, but simply to set forth the elements of the offense with "sufficient clarity and certainty to apprise the accused of the crime with

which he is charged." *United States v. Kay,* 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Bearden,* 423 F.2d 805, 810 (5th Cir. 1970). Finally, on a motion to dismiss an indictment, the Court must take the indictment's allegations as true. *See Id.* (quoting *United States v. Hogue,* 132 F.3d 1087, 1089 (5th Cir.1998)).

The Government agrees the Fifth Circuit has held "if a question of law is involved, then consideration of the motion is generally proper." *United States v. Flores,* 404 F.3d 320, 324 (5th Cir. 2005) (citing *United States v. Korn,* 557 F.2d 1089, 1090 (5th Cir. 1977). That is not the case here. Defendant's Motion is an argument of fact and not law.

WHEREFORE, PREMISES CONSIDERED, the Government hereby notices the Court and the Defendant of its intention to introduce evidence against the Defendant pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence as described above, agrees to a Severance of the cases against Defendant and co-defendant Toree White and respectfully requests the Court to deny Defendant's Motion to dismiss as no proper grounds for Dismissal have been articulated.

Date:  November 5, 2024

Respectfully submitted,

Alamdar S. Hamdani
United States Attorney
Southern District of Texas

By: *s/ Lisa M Collins*
Lisa M. Collins
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was provided to counsel for defendant via electronic filing and email.

*s/ Lisa M Collins*
Lisa M. Collins
Assistant United States Attorney